1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   FREEMAN FELDER,                          No.  2:20-CV-0266-WBS-DMC-P

12            Plaintiff,

13      v.                                     ORDER

14   H. MACIAS, et al.,                        and

15            Defendants.                      FINDINGS AND RECOMMENDATIONS

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for summary judgment.  See

19   ECF No. 46.  Plaintiff has filed a late opposition.  See ECF No. 62.  Defendants have filed a

20   reply.  See ECF No. 63.  Also before the Court is Plaintiff's motion for an extension of time to

21   file a sur-reply.  See ECF No. 64.  No proposed sur-reply brief was submitted with Plaintiff's

22   request.

23          The Federal Rules of Civil Procedure provide for summary judgment or summary

24   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

25   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

26   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

27   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

28   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of

1

the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

/ / /

/ / /

2

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A.    Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  At the time of the events alleged, Plaintiff was an inmate at Mule Creek State Prison.  The action proceeds against the following defendants: (1) H. Macias, Corrections Officer, (2) D. Martin, Corrections Officer, and (3) K. Green, Corrections Officer.  Plaintiff requests punitive and compensatory damages from Defendants in both their individual and official capacities.

Plaintiff claims that Defendants Macias and Martin violated his Eighth Amendment rights by using excessive force.  Plaintiff alleges that on May 25, 2018, two drunk inmates started an argument with Plaintiff and began throwing punches at him.  Plaintiff claims that Defendant Martin then threw a blast grenade at Plaintiff and the other two inmates from six feet away.  Plaintiff alleges that the grenade exploded inches from his foot and left a puncture wound. Plaintiff also alleges that Defendant Macias began firing direct-impact rounds towards Plaintiff and the other two inmates.  Plaintiff claims that all four rounds fired struck Plaintiff and none of the rounds struck his attackers.  Plaintiff claims he suffered a distal fracture in his

3

1  kneecap, a patellar fracture, a hematoma over his sternum, a lung contusion, and multiple

2  abrasions as a result of the grenade and the direct-impact rounds.

3          Plaintiff also alleges that Defendants violated his procedural due process rights

4  related to disciplinary proceedings.  Plaintiff alleges that Defendant Martin and Defendant Macias

5  issued Plaintiff a Rules Violation Report for fighting. Plaintiff also alleges that Defendant Green

6  was assigned to investigate the Rules Violation Report and failed to interview staff and inmate

7  witnesses crucial to Plaintiff's defense.

8          Plaintiff was found guilty at the hearing and appealed.  Plaintiff claims that

9  Lieutenant Ladson ordered the Rules Violation Report reissued and reheard.  Plaintiff was found

10  guilty on rehearing. Plaintiff claims the rehearing violated his constitutional rights due to an

11  inadequate investigation and failure to interview critical witnesses.  Plaintiff's complaint does not

12  clearly establish whether he was not allowed witnesses at the first hearing, second hearing, or

13  both.  See ECF No. 1, pgs. 8-9.

14      **B.**      **Procedural History**

15          On October 28, 2021, the Court issued an order that this case proceed on

16  Plaintiff's original complain as to Plaintiff's Eighth Amendment excessive force claims against

17  Defendants Macias and Defendant Martin and Plaintiff's Fourteenth Amendment due process

18  claim against Defendant Green.  See ECF No. 26.  All other claims and defendants were

19  dismissed for failure to state a claim. See id.  On December 16, 2021, Defendants Macias, Martin,

20  and Green filed their answer to Plaintiff's complaint. See ECF No. 28.

21          The matter was stayed on December 9, 2021, to allow for participation in the

22  Court's early Alternative Dispute Resolution program.  The stay was extended through May 5,

23  2022.  By minute order, the Court determined the case was not ready to proceed with a settlement

24  conference with Magistrate Judge Jeremy D. Peterson.  See ECF No. 34.  The Court lifted the

25  stay of proceedings and set a schedule for the case on May 20, 2022.  See ECF No. 35.

26  Defendants filed the currently pending motion for summary judgment on September 1, 2023.  See

27  ECF No. 46.  On December 19, 2023, the Court approved the substitution of Plaintiff Freeman

28  Felder, pro se, for retained counsel Michael D. Donaldson, Esq.  See ECF No. 55.  On March 4,

4

1    2024, the Court denied Plaintiff's motion to appoint new counsel and approved his request for an

2    extension of time to file a substantive pro se opposition to Defendants' motion for summary

3    judgment within 30 days.  See ECF No. 60.  Plaintiff file a late opposition brief on May 6, 2024.

4    See ECF No. 62.  Defendants filed their reply brief on May 16, 2024.  See ECF No. 63.

5

6                            **II.  THE PARTIES' EVIDENCE**

7            A.    **Defendants' Motion**

8                 Defendants' motion for summary judgment is supported by points and authorities,

9    ECF No. 46-1, and a separate Statement of Undisputed Facts (SUF), ECF No. 46-3.  Defendants'

10   SUF includes the sworn declarations, and exhibits attached thereto, of the following: (1)

11   Defendant Macias, attached as Exhibit B; (2) Defendant Martin, attached as Exhibit C; (3)

12   Defendant Green, attached as Exhibit D; (4) S. De Jesus, attached as Exhibit H; (5) H. Fletes,

13   attached as Exhibit I; (6) Howard E. Mosely, attached as Exhibit J.  See ECF No. 46-3.

14                Defendants have also included the following: (1) the May 25, 2018 Crime/Incident

15   Report, attached as Exhibit E; (2) Plaintiff's Rules Violation Report regarding the May 25, 2018

16   incident, attached as Exhibit F; (3) Plaintiff's Felony Abstract of Judgment Report, attached as

17   Exhibit G; (4) Plaintiff's Inmate/Parole Appeals Tracking System Report, ECF No. 46-3, pg. 119;

18   (5) Plaintiff's Inmate/Parole Appeals Tracking System Report, ECF No. 46-3, pg. 129.; (6)

19   CDCR Internal Memorandum, ECF No. 46-3, pg. 131-181; (7) CDCR Inmate Interview for

20   Allegation Worksheet, ECF No. 46-3, pg. 183-224; (8) CDCR CDC Form 695, ECF No. 46-3,

21   pg. 226-230; (9) CDCR CDC Form 695, ECF No. 46-3, pg. 232-235; (10) CDCR CDC Form

22   695, ECF No. 46-3, pg. 237-244; (11) CDCR Inmate/Parolee Appeal Documents, ECF No. 46-3,

23   pg. 246-261; (12) CDCR CDC Form 695, ECF No. 46-3, pg. 263-271; (13) CDCR CDC Form

24   695, ECF No. 46-3, pg. 273-279; (14) CDCR Inmate/Parolee Appeal Documents, attached as

25   Exhibit J; (15) CDCR Inmate/Parolee Appeals Tracking Report, ECF No. 46-3, pg. 293; and (16)

26   CDCR Third Level Appeal Decision, ECF No. 46-3, pg. 295-332.

27   / / /

28   / / /

                                        5

Concerning Plaintiff's excessive force claims, Defendants assert that the following facts are not in dispute:

1.      At all times relevant to this action, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation (CDCR) as a prisoner at Mule Creek State Prison (MCSP), in Ione, California. (Pl.'s Dep. 9:20-24, attached as Ex. A.)

2.      At all times relevant to this action, Defendant Macias was employed by CDCR as a Correctional Officer at MCSP. (Declaration of H. Macias, ¶ 1, attached as Ex. B.)

3.      At all times relevant to this action, Defendant Martin was employed by CDCR as a Correctional Officer at MCSP. (Declaration of D. Martin, ¶ 1, attached as Ex. C.)

4.      At all times relevant to this action, Defendant Green was employed by CDCR as a Correctional Officer at MCSP. (Declaration of K. Green, ¶ 2, attached as Ex. D.)

5.      At approximately 10:40 a.m. on May 25, 2018, two inmates (Plaintiff and Lewis) began fighting in the Facility A dayroom at MCSP. The two inmates were punching each other in the facial and upper torso areas. (Macias Decl. ¶ 6; Martin Decl. ¶ 6; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 2, attached as Ex. E.)

6.      Defendant Macias was working in the control booth of Building 1 dayroom, which is approximately 30 feet away from area where Plaintiff and inmate Lewis were fighting. (Macias Decl. ¶¶ 2-3,7; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 2.)

7.      Defendant Martin was working as a Floor Officer in the Facility A dayroom. (Martin Decl. ¶ 2.)

8.      As soon as Defendant Martin observed the fight, he immediately made a call on his walkie-talkie to main control (the area that receives all radio calls and rebroadcasts them to all correctional staff), advising that two inmates were fighting in the "A" side dayroom. (Martin Decl. ¶¶ 6-7; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 8.)

9.      During the course of the fight, a third inmate, Polney, joined the altercation by punching and kicking Felder. (Macias Decl. ¶ 12; Martin Decl. ¶ 14; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 2.)

10.      During the course of the fight, Defendants Macias and Martin, as well as other correctional staff, gave the inmates multiple orders to get down, however the inmates ignored these orders and continued fighting. (Macias Decl. ¶¶ 8, 10, 15, 17, 20; Martin Decl. ¶¶ 8, 10, 12, 15, 17, 20; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 2.)

6

11.     It was only after Defendant Macias deployed four rounds from the 40 mm launcher, and Defendant Martin deployed a pepper-spray grenade, that the inmates stopped fighting, complied with correctional staff's orders, and all laid down on the ground. (Macias Decl. ¶¶ 6-19; Martin Decl. ¶¶ 5-19; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 2.)

12.     Following the incident, Plaintiff suffered loss of consciousness, a concussion, and a fractured right knee. (Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p.16; Pl.'s Dep. 30:3-7.)

13.     As soon as Defendant Martin heard two inmates arguing in the "A" side dayroom, he looked into the "A" side dayroom and observed Plaintiff and inmate Lewis punching each other in the upper torso and facial areas. (Martin Decl. ¶¶ 5-6; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, pp. 8-9.)

14.     After observing Plaintiff and inmate Lewis fighting, Defendant Martin immediately made a call on his walkie-talkie to main control (the area that receives all radio calls and rebroadcasts them to all correctional staff), advising that two inmates were fighting in the "A" side dayroom. (Martin Decl. ¶ 7; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 8.)

15.     Defendant Martin ordered Plaintiff and inmate Lewis to get down, but they continued fighting. (Martin Decl. ¶ 8; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05- 0239A1, p. 8.)

16.     Because Plaintiff and inmate Lewis ignored Defendant Martin's order to get down, Martin deployed an OC blast grenade (pepper-spray grenade) by throwing it at the inmates' feet. The OC powder was deployed, but the inmates continued fighting. (Martin Decl. ¶ 9; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 8.)

17.     Defendant Martin's sole intent in deploying the OC blast grenade was to stop Plaintiff and inmate Lewis from fighting one another and restore order. (Martin Decl. ¶¶ 21-22.)

18.     Under CDCR's use of force policy, if an inmate fight occurs, or if an inmate assaults a correctional staff member, a floor officer, such as Defendant Martin, must first issue an order to get down. If that order is ignored, the officer must then assess what level of force is necessary to gain compliance and restore order. (Martin Decl. ¶ 3.)

19.     CDCR use-of-force policy and training authorizes use of an OC blast grenade to address inmate fights. (Martin Decl. ¶ 3.)

20.     Inmate Polney then ran over and began punching Plaintiff in the head and facial areas. (Martin Decl. ¶ 14; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p.8.)

/ / /

1         21.     Inmate Polney then ran over and began punching Plaintiff
in the head and facial areas. (Martin Decl. ¶ 14; Crime/Incident Report,
2    CDC 837-A, log no. MCSP-A01-18-05-0239A1, p.8.)

3         22.     Defendant Martin heard Defendant Macias give two more
orders to get down, but inmate Polney continued punching Plaintiff, and
4    inmate Lewis began kicking Plaintiff in the head. (Martin Decl. ¶¶ 15-17.)

5         23.     After Defendant Macias deployed a fourth less-lethal round
from the 40 mm launcher, correctional staff in the dayroom responded to
6    the scene, ordered the inmates to get down, and all three inmates
complied. (Martin Decl. ¶¶ 18-19; Crime/Incident Report, CDC 837-A,
7    log no. MCSP-A01-18-05-0239A1, pp. 8-9.)

8         24.     If an inmate fight occurs in the dayroom, or if an inmate
assaults a correctional staff member, Defendant Macias was required to
9    first issue an order to get down. If that order is ignored, Macias was
authorized to use the 40 mm less-lethal launcher. (Macias Decl. ¶ 4.)
10

11         25.     The 40 mm launcher is a special-purpose firearm designed
to launch 40 mm projectiles which are low velocity, less-lethal, rubber
12    rounds. (Macias Decl. ¶ 5.)

13         26.     On May 25, 2018, Defendant Macias observed two inmates
(Plaintiff and inmate Lewis) fighting. The two inmates were punching
14    each other in the facial and upper torso areas. (Macias Decl. ¶ 6.)

15         27.     From the control booth, Defendant Macias was
approximately 30 feet away from Plaintiff and inmate Lewis when they
16    began fighting. (Macias Decl. ¶¶ 6-7; Crime/Incident Report, CDC 837-A,
log no. MCSP-A01-18-05-0239A1, pp. 2, 7.)

17         28.     Defendant Macias ordered both inmates to get down, but
they continued fighting. (Macias Decl. ¶ 8; Crime/Incident Report, CDC
18    837-A, log no. MCSP-A01-18-05-0239A1, pp. 2, 7.)

19         30.     Defendant Macias was unable to see if the round struck
Plaintiff or inmate Lewis; however, the two inmates continued fighting.
20    (Macias Decl. ¶ 9; Crime/Incident Report, CDC 837-A, log no. MCSP-
A01-18-05-0239A1, p. 7.)
21

22         31.     Defendant Macias gave a second order for the inmates to
get down, however they continued fighting. (Macias Decl. ¶ 10;
23    Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1,
p. 7.)

24         32.     Because the inmates ignored Defendant Macias's second
order to get down, Macias fired another round from the 40 mm launcher,
25    aiming for Plaintiff's upper left thigh. (Macias Decl. ¶ 11; Crime/Incident
Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)
26

27         33.     Defendant Macias was unable to see if the round struck
Plaintiff or inmate Lewis; however, the inmates continued fighting.
28    (Macias Decl. ¶ 11; Crime/Incident Report, CDC 837-A, log no. MCSP-
A01-18-05-0239A1, p. 7.)

34.   A third inmate, inmate Polney, joined the fight and began punching Plaintiff in the upper facial and torso areas. Plaintiff then lay down on the ground and covered his face. (Macias Decl. ¶¶ 12-13; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

35.   Inmates Lewis and Polney punched and kicked Plaintiff on his facial and upper torso areas as Plaintiff lay on the ground. (Macias Decl. ¶ 14; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

36.   Defendant Macias gave a third order for the inmates to get down; however, they continued fighting. (Macias Decl. ¶ 15; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

37.   Because the inmates ignored Defendant Macias's third order to get down, Macias fired another round from the 40 mm launcher, aiming for the upper left thigh of inmate Polney. (Macias Decl. ¶ 16; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p.7.)

38.   Defendant Macias was unable to see if the round struck inmate Polney, inmate Lewis, or Plaintiff, but inmates Polney and Lewis continued punching and kicking Plaintiff. (Macias Decl. ¶ 16; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

39.   Defendant Macias gave a fourth order for the inmates to get down; however, they continued fighting. (Macias Decl. ¶ 17; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

40.   Because the inmates ignored Defendant Macias's fourth order to get down, Macias fired another round from the 40 mm launcher, aiming for the upper left thigh of inmate Lewis. (Macias Decl. ¶ 18; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p.7.)

41.   Defendant Macias was unable to see if the round struck inmate Lewis, inmate Polney, or Plaintiff, but inmates Polney and Lewis continued punching and kicking Plaintiff. (Macias Decl. ¶ 18; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

42.   Correctional staff on the ground of the dayroom responded to the scene, ordered the inmates to get down, and all three inmates complied. (Macias Decl. ¶ 19; Crime/Incident Report, CDC 837-A, log no. MCSP-A01-18-05-0239A1, p. 7.)

43.   Defendant Macias gave repeated orders to Plaintiff and inmates Lewis and Polney to get down to prevent them from fighting one another. (Macias Decl. ¶ 20.)

/ / /

9

44. Once Plaintiff was on the ground, Defendant Macias gave repeated orders to inmates Lewis and Polney to get down in order to protect Plaintiff and stop inmates Lewis and Polney's attack on Plaintiff. (Macias Decl. ¶ 20.)

45. Each time Defendant Macias fired the 40 mm launcher at the inmates, his intent was to stop them from fighting one another. (Macias Decl. ¶ 21.)

46. Once Plaintiff was on the ground, Defendant Macias's intent in firing the 40 mm launcher was to protect Plaintiff and stop inmates Lewis and Polney's attack on Plaintiff. (Macias Decl. ¶ 21.)

47. In firing the 40 mm launcher at the inmates, Defendant Macias's sole motivation was to stop the inmates from fighting and control the situation. (Macias Decl. ¶ 22.)

48. At no time on May 25, 2018, did Defendant Macias intend to harm Plaintiff or inmates Lewis or Polney. (Macias Decl. ¶ 23.)

ECF No. 46-3, pgs. 1-7.

Next, as to Plaintiff's due process claim, Defendants assert the following facts are undisputed:

49. Following the May 25, 2018, incident, Plaintiff was found guilty in a Rules Violation Report (RVR) of fighting, and he was assessed a 61-day forfeiture of behavioral credits. (Rules Violation Report log no. 000000005081654, attached as Ex. F.)

50. Plaintiff's loss of behavioral credits has not been restored. (Rules Violation Report log no. 000000005081654, p. 2.)

51. Plaintiff is currently serving a determinate sentence of 29 years and eight months. (Felony Abstract of Judgment-Determinate, dated January 29, 2018, attached as Ex. G.)

52. Defendant Green had no involvement in the issuance, processing, investigation, or adjudication of the Rules Violation Report. (Green Decl. ¶¶ 3-6.)

ECF No. 46-3, pg. 7.

Finally, as to exhaustion of administrative remedies, Defendants contend the following facts are not in dispute:

53. CDCR provides its inmates with a comprehensive administrative grievance process in which inmates may appeal any decision, action, condition, policy or omission, made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare. (Declaration of S. De Jesus, ¶¶ 1-6, attached as Ex. H; Declaration of H. Fletes, ¶¶ 1-6, attached as Ex. I.)

10

54.     The grievance process has three levels, and a final decision at the third level exhausts the grievance. (De Jesus Decl. ¶¶ 1-6; Fletes Decl. ¶¶ 1-6.)

55.     Plaintiff filed his original complaint in this matter on February 5, 2020, alleging that Defendant Green failed to properly investigate the Rules Violation Report that was issued to Plaintiff following the May 25, 2018, incident. (Complaint, ECF No. 1.)

56.     Plaintiff filed one grievance regarding a due process claim, however he did not pursue that grievance to the third level of review. (Fletes Decl. ¶ 11(c); Declaration of H. Moseley, ¶¶ 7-9, attached as Ex. J.)

57.     Plaintiff never filed a grievance concerning Defendant Green's alleged involvement in the Rules Violation Report that was issued to Plaintiff following the May 25, 2018, incident at MCSP. (Fletes Decl. ¶¶ 9-12; De Jesus Decl. ¶¶ 9-11; Moseley Decl. ¶ 7-9.) 280015.

58.     Plaintiff filed appeal log no. TLR 1812969, which was reviewed and denied at the third level of review, concerning his claim that Defendants Macias and Martin used excessive force against him on May 25, 2018. This appeal contains no mention of a due process claim against Defendant Green nor does it mention Defendant Green. (Moseley Decl. ¶¶ 7-9.)

ECF No. 46-3, pg. 7-8.

**B.      Plaintiff's Opposition**

Plaintiff's late-filed opposition consists of his own declaration, ECF No. 62, pgs. 4-7, a Statement of Disputed Facts (SDF), id. at 8-9, and a memorandum of points and authorities, id. at 10-13.  Plaintiff has not submitted any other documentation in support of his opposition.  In his SDF, Plaintiff asserts that the following questions are in dispute:

1.      Whether Plaintiff was fighting with another inmate and was punching inmate Lewis?

2.      Whether Plaintiff offered any resistance or disobedience before Defendants tear gassed him?

3.      Whether Plaintiff offered resistance or disobedience to Defendants before they told him to sit and wait at the A-side dayroom table?

4.      Whether plaintiff offered any resistance or disobedience to Defendants when they were shooting at Plaintiff?

/ / /

11

5.      Whether the force used by Defendants against Plaintiff was applied in a good-faith effort to maintain or restore order, or maliciously and sadistically to cause harm?

6.      Whether Plaintiff's injuries resulted from his own acts of resistance or from Defendants' purposeful use of unnecessary force?

ECF No. 62, pgs. 8-9.

## III.  DISCUSSION

In the pending motion for summary judgment, Defendants argue they are entitled to judgment as a matter of law because: (1) the undisputed evidence establishes that Defendant Macias and Defendant Martin did not use excessive force during the May 25, 2018, incident; (2) the undisputed evidence establishes that Defendant Green did not violate Plaintiff's procedural due process rights; (3) the Heck-bar precludes Plaintiff's procedural due process claim; and (4) Plaintiff has failed to exhaust his administrative remedies regarding the factual circumstances that encompass his procedural due process claim.  See ECF No. 46-1.

### A.      **Excessive Force**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

1  official must have a "sufficiently culpable mind."  See id.

2       When prison officials stand accused of using excessive force, the core judicial

3  inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

4  or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

5  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

6  opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

7  is applied to excessive force claims because prison officials generally do not have time to reflect

8  on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

9  U.S. at 320-21.  In determining whether force was excessive, the court considers the following

10  factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

11  between the need for force and the amount of force used; (4) the nature of the threat reasonably

12  perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

13  See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

14  was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

15  1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

16  because the use of force relates to the prison's legitimate penological interest in maintaining

17  security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

18  475 U.S. at 321-22.

19       Defendants contend that application of the Hudson factors demonstrates Defendant

20  Macias and Defendant Martin applied force in a good-faith effort to restore discipline.  See ECF

21  No. 46-1, pg. 14-19.  As to the first factor, Defendants concede that Plaintiff suffered serious

22  injuries but argue this factor is not dispositive.  See id. at 15.  The Court focuses the discussion on

23  the remaining Hudson factors.

24       As to the remaining factors, Defendants argue:

25            There can be no doubt that there was a need for the application of
    force. A fight erupted in MCSP's Facility A dayroom on May 25, 2018.
26            (DUF 5.) Defendants Macias and Martin responded and, throughout the
    fight, shouted multiple orders for the inmates to "Get down!" (DUF 8, 10.)
27            All three inmates ignored the orders and continued to fight. (DUF 10.) The
    fight was chaotic and dangerous. (DUF 5, 9, 11.)
28

13

* * *

The third *Hudson* factor, regarding the relationship between the need for a forceful response and the amount of force used favors Defendants Macias and Martin's use of force. Here, there was a direct relationship between the escalating need for a forceful response and the commensurate amount of force used. All three inmates ignored the orders to "Get down!" and continued to fight. (DUF 10.) Throughout the fight, it was necessary for multiple force options to be used, including a pepper-spray grenade and 40 mm "less-lethal" launchers, in order to regain control of the dayroom. (DUF 8-44.) It is undisputed that the pepper-spray grenade and 40 mm launchers were appropriate force tools to use under the circumstances. (*Id*.) Even then, Defendant Martin's use of his pepper-spray grenade and Defendant Macias's use of three rounds from his 40 mm launcher did not stop the fight. It was not until Defendant Macias deployed a fourth round from his 40 mm launcher that the fight stopped. (DUF 39-41.)

* * *

The fourth *Hudson* factor, regarding the threat that was reasonably perceived by the Defendants, supports Defendants Macias and Martin's lawful use of force. When Macias observed the inmates fighting, he immediately announced an alarm via institutional radio, requiring all available custody staff throughout the institution respond. (DUF 8.)

After observing the inmates fighting, and throughout the incident, Defendants Macias and Martin shouted multiple orders for inmates to "Get down!" which all three inmates ignored. (DUF 8-44.) Moreover, even after Martin deployed a pepper-spray grenade, and Macias deployed three less-lethal rounds from the 40 mm launcher, all three inmates continued to fight. (DUF 16, 29-38.)

Defendants Macias and Martin also describe the specific threats they individually perceived. Both Defendants observed three inmates who were actively fighting each other and not complying with orders to assume a prone position. (DUF 8-44.)

Under these circumstances, any reasonable prison official would perceive that the incident was dangerous, and that force was necessary to stop it.

* * *

The fifth and final *Hudson* factor, regarding the efforts made to temper the severity of a forceful response, also favors Defendants Macias and Martin. Macias and Martin reacted to the fight and did not prolong the use of force beyond what was necessary. Macias and Martin shouted multiple verbal orders for the fighting inmates to "Get down!" to no avail. (DUF 8-44.) Two force options were used during the incident, consisting of one pepper spray grenade and four less-lethal rounds from the 40 mm launcher, to separate the inmates. (*Id*.) These force options were ineffective, and all the inmates continued fighting, until Macias deployed a fourth less-lethal round from the 40 mm launcher. (DUF 40-42.) The use of force then stopped after the inmates assumed prone positions. (DUF 42.) Under these circumstances, Macias and Martin used only the force

/ / /

14

1  necessary in response to the fight.  Therefore, the Court should grant
   summary judgment for Macias and Martin.

2  ECF No. 46-1, pgs. 16-18.

3

4      Defendants' arguments are well-taken.  The evidence establishes that the two

5  distinct uses of force at issue include Defendant Martin's use of an OC pepper spray blast grenade

6  and Defendant Macias' use of four rounds from the 40-mm launcher.  It is undisputed that

7  Defendant Martin was, at one point, the only correctional officer tasked with deescalating the

8  incident at issue.  See ECF No. 46-3, pg. 23.  Having already issued a verbal order to stop, which

9  was ignored, the Court finds that Defendant Martin reasonably raised his response level.  Given

10 deference to the need to maintain security and order, the Court also finds the incident at issue was

11 undisputedly dangerous.  The evidence shows Defendant Martin was outnumbered by the inmates

12 involved, the inmates subsequently ignored his verbal order to stop, and the inmates were

13 engaged in harming upper torso and facial areas.  Thus, Defendant Martin's use of a non-lethal

14 OC blast grenade was an appropriate application of force under the very dangerous

15 circumstances.

16     Next, Defendants argue that Defendant Macias' use of 40-mm projectiles was

17 done in a good-faith effort to maintain and restore order.  ECF No. 46-1, pg. 17.  Ultimately, the

18 record indicates Defendant Macias released four 40-mm rounds, resulting in injuries to Plaintiff's

19 left shoulder and right kneecap during the incident at issue.  ECF No. 46-3, pg. 13.  While

20 relevant, Plaintiff's injuries are not dispositive as to whether they were the result of excessive

21 force.  The Court agrees that Defendant Macias approached a highly volatile incident.  On the

22 evidence provided by Defendants, Defendant Macias faced fighting inmates who had ignored

23 multiple verbal orders and an OC blast grenade before he fired the first 40-mm rubber round at

24 one of the inmates.  See id. pg. 19.  The undisputed record shows this pattern repeated, and

25 Defendant Macias then fired a second 40-mm rubber round.  See id.

26 / / /

27 / / /

28 / / /

1    The Court acknowledges that the undisputed evidence of continued fighting, a

2 consistent disregard for verbal orders, and Defendants' first uses of force to stop the fight are

3 reasonable indicators to believe additional force was necessary to restore order and safety.  The

4 involvement of a third inmate presented a growing need for the restoration of order, resulting in a

5 further pattern of verbal orders and firing of the third and fourth 40-mm rounds.  The undisputed

6 evidence also establishes that the use of force stopped as soon as the inmates complied with

7 correctional officers' orders.  In sum, the evidence shows that, contrary to Plaintiff's allegations

8 of excessive force, Defendant Macias and Defendant Martin applied the necessary level of force

9 required under the circumstances to restore discipline.

10    The Court finds that Defendants have met their burden on summary judgment of

11 demonstrating the non-existence of a genuine dispute of material fact.  Defendants' evidence

12 shows that the actions taken by Defendant Martin and Defendant Macias were in good faith

13 because Defendants' actions reflected their assessment of the reasonable level of force necessary

14 to restore order at that time under the circumstances presented to them.  Plaintiff has not pointed

15 to any evidence to create a genuine dispute of material fact as to the reasonableness of the force

16 used.  Therefore, Plaintiff cannot prevail on his Eighth Amendment excessive force claims and

17 Defendant Macias and Martin are entitled to judgment in their favor as a matter of law.

18    **B.**    **Procedural Due Process**

19    Defendants raise three arguments related to Plaintiff's procedural due process

20 claim against Defendant Green.  First, Defendants argue that Defendant Green cannot be liable

21 because the undisputed evidence shows he had no involvement with Plaintiff's Rules Violation

22 Report or resulting disciplinary hearings.  See ECF No. 46-1, pgs. 19-20.  Second, Defendants

23 argue that Plaintiff's claim is Heck-barred because success on the merits would necessarily imply

24 the invalidity of the guilty finding and resulting loss of 61 days good-time credits.  See id. at 20-

25 22.  Third, Defendants argue that Plaintiff failed to exhaust administrative remedies as to this

26 claim.  See id. at 23-25.

27 ///

28 ///

16

1          1.      Exhaustion

2          Prisoners seeking relief under § 1983 must exhaust all available administrative

3  remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

4  regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

5  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

6  the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

7  while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

8  Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and

9  held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

10 because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

11 defendants; (2) an individual named as a defendant does not necessarily need to be named in the

12 grievance process for exhaustion to be considered adequate because the applicable procedural

13 rules that a prisoner must follow are defined by the particular grievance process, not by the

14 PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

15 all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

16 instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

17 burden of showing that the grievance process was not available, for example because it was

18 thwarted, prolonged, or inadequate.  See id.

19         The Supreme Court held in Woodford v. Ngo that, in order to exhaust

20 administrative remedies, the prisoner must comply with all of the prison system's procedural

21 rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus,

22 exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

23 Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

24 which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

25 at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

26 quantity of prisoner suits "because some prisoners are successful in the administrative process,

27 and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

28 When reviewing exhaustion under California prison regulations which have since been amended,

17

the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  The inmate must submit their appeal on the proper form and is required to identify the staff member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy.  See id.  Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).  Group appeals are permitted on the proper form with each inmate clearly identified and signed by each member of the group.  See Cal. Code Regs. tit 15, § 3084.2(h).

Defendants argue:

Felder filed appeal log no. TLR 1812969, which was reviewed and denied at the third level of review, concerning his claim that Defendants Macias and Martin used excessive force against him on May 25, 2018. This appeal contains no mention of a due process claim against Defendant Green nor does it mention Defendant Green. (DUF 58.) In addition, Felder filed no other inmate grievances in which he claimed that Defendant Green violated his due process rights for the Rules Violation Report Felder received for fighting following the May 25, 2018 incident. (DUF 57.)

* * *

Here, Felder failed to pursue any due process grievance against Defendant Green to third level of review. (DUF 56-57.) Moreover, in the one grievance Felder did pursue to the third level, he did not identify any due process claim against Green. (DUF 58.) Accordingly, Felder did not exhaust administrative remedies as to Green, and Green is entitled to summary judgment.

ECF No. 46-1, pgs. 24-25.

The Court agrees.  Based on the undisputed evidence outlined above, Plaintiff submitted his inmate grievance only regarding his excessive force claims against Defendant Macias and Defendant Martin, without naming Defendant Green.  There is no evidence indicating that Plaintiff ever sought a decision at the third and final level regarding his due process claim. Therefore, Plaintiff's claim of a due process violation is unexhausted as to Defendant Green because Plaintiff did not complete the administrative grievance process.

2.     _Heck_ Bar

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam).  Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing resulting in imposition of a sanction affecting the overall length of confinement, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding.  See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor).  In particular, where the claim involves the loss of good-time credits as a result of an adverse prison disciplinary finding, the claim is not cognizable.  See

19

1   Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because

2   allegations of procedural defects and a biased hearing officer implied the invalidity of the

3   underlying prison disciplinary sanction of loss of good-time credits); Blueford v. Prunty, 108 F.3d

4   251, 255 (9th Cir. 1997).

5                    According to Defendants:

6               Felder was found guilty in Rules Violation Report log no.
        000000005081654 of fighting. (DUF 49.) As a result, Felder lost 61 days
7        of behavioral credits. Id. And Felder's loss behavioral credits have not
        been restored. (DUF 50.)
8
        ECF No. 46-1, pg. 20.
9

10                  The undisputed evidence shows that Plaintiff was assessed a loss of good-time

11  credits.  The undisputed evidence also shows that this sanction has not been reversed.  Given

12  these facts, success on the merits of Plaintiff's procedural due process claim would necessarily

13  imply the invalidity of the disciplinary sanction and, as such, the claim is barred even if it is

14  exhausted.  See Heck, 512 U.S. at 483; Edwards, 520 U.S. at 646.

15                  3.      Lack of Involvement of Defendant Green

16                  Defendants argue that Plaintiff cannot prevail on his procedural due process claim

17  against Defendant Green for the simple fact that Green was not involved in issuance of the Rules

18  Violation Report or resulting disciplinary proceedings.  According to Defendants:

19              The undisputed evidence establishes that Defendant Green had no
        involvement in the issuance, processing, investigation, or adjudication of
20       the RVR that was issued to Felder following the May 25, 2018, incident.
        (DUF 52.) The undisputed facts thus establish that Green did not
21       proximately cause Felder to be unable to call witnesses, or have their
        testimony presented, during the rules violation hearing. Accordingly,
22       Green is entitled to summary judgment on Felder's due process claim.

23      ECF No. 46-1, pg. 20.

24                  The Court agrees.  According to Defendant Green, he was never notified that he

25  had been appointed to be an investigative officer with respect to the Rules Violation Report at

26  issue.  See ECF No. 46-3, pgs. 26-27 (Green declaration).  Green further states that he had no

27  involvement whatsoever in the Rules Violation Report of subsequent disciplinary proceedings.

28  See id.  Green was also unaware that Plaintiff had ever requested that inmate witnesses or

                                            20

1  correctional staff be interviewed.  See id.  On this record, the Court finds that Defendants have

2  met their initial burden on summary judgment, and Plaintiff has not offered any evidence to put

3  Green's declaration in dispute.  Thus, even if the claim was exhausted and not Heck-barred,

4  Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

5

6                                    **IV.  CONCLUSION**

7          Based on the foregoing, the undersigned orders and recommends as follows:

8          1.       It is ORDERED that Plaintiff's motion for an extension of time to file a

9  sur-reply, ECF No. 64, is DENIED.

10         2.       It is RECOMMENDED that Defendant's motion for summary judgment,

11  ECF No. 46, be GRANTED.

12         These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court.  Responses to objections shall be filed within 14 days after service of

16  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

17  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

18

19  Dated:  July 15, 2024

20                                              _____
                                                DENNIS M. COTA
21                                              UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

                                               21